**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BREEZE SMOKE LLC,

     Plaintiff,

vs.

ZIGZAG LLC d/b/a SHORES
DISTRIBUTOR, MIKE KINAIA,
ABRAHIM AL-ABOODY, and
HAIDER AWAD ALMASHADI.

     Defendants.

Case No. 26-cv-11892

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff Breeze Smoke LLC ("Breeze Smoke"), by its undersigned attorneys Honigman LLP, for its Complaint against Defendants ZigZag LLC d/b/a Shores Distributor, Mike Kinaia, Abrahim Al-Aboody, and Haider Awad Almashadi (collectively, referred to herein as "Defendants") alleges as follows:

**NATURE OF THE CASE**

1.    Breeze Smoke is a leading manufacturer, distributor, and seller of electronic nicotine delivery systems ("ENDS") and other vaping products throughout the United States. To protect its valuable brand, Breeze Smoke has applied for and obtained significant intellectual property protection, including but not limited to registered trademarks for the term "Breeze," in connection with its ENDS or vaping products. Unfortunately, due to the popularity and high quality of

Breeze Smoke's products, Breeze Smoke is often the target of infringers, forcing Breeze Smoke to bring numerous successful infringement claims against these infringers.

2.      Defendants are distributors and sellers that are knowingly and deliberately trading off the immense goodwill and consumer recognition associated with Breeze Smoke's brand by manufacturing, marketing, distributing, and selling a counterfeit and infringing vaping product under the name "BREEZY BAR" ("Infringing Product")—a mark that is confusingly similar, if not virtually identical, to the Breeze Smoke BREEZE Marks—with the intent to deceive consumers and unlawfully capitalize on the reputation that Breeze Smoke has built through years of investment and legitimate commercial activity.



### INFRINGING BREEZY BAR PRODUCTS

3.      Before filing this lawsuit, Breeze Smoke attempted to resolve this infringement without court intervention. Once Breeze Smoke was alerted of this

infringement, it immediately sent a cease and desist letter to Defendants. (Exhibit 1). Rather than comply, or even respond, Defendants chose to ignore this letter entirely and brazenly continued their infringing conduct. (Exhibit 2).

4. Unfortunately, this is not the first time that Breeze Smoke has had to engage in enforcement efforts against the infringing BREEZY BAR products. Breeze Smoke previously litigated against sellers of these very same Infringing Products in *Breeze Smoke, LLC v. Yatin Enterprises Inc., et al.*, Case No. 1:22-cv-01182-HYJ-SJB (W.D. Mich.) (the "Prior Breezy Bar Enforcement Matter"), before the Honorable Hala Y. Jarbou. In that action, the Court first granted Breeze Smoke a Preliminary Injunction, then later a Stipulated Permanent Injunction requiring the defendants to, among other things, cease any and all sales of the "BREEZY BAR" products depicted above. (Exhibits 3 and 4).

5. Thus, this is an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §1501, *et seq.*, as well as related state and common law claims, in which Breeze Smoke is seeking immediate injunctive relief and monetary damages for Defendants' willful infringement of Breeze Smoke's BREEZE trademarks.

## **PARTIES, JURISDICTION AND VENUE**

6. Breeze Smoke is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 1471

E. Nine Mile Road, Unit 200, Hazel Park, MI 48030.

7. Upon information and belief, Defendant ZigZag LLC d/b/a Shores Distributor is a limited liability company registered in Michigan with its principal place of business at 6267 Millett Road, Sterling Heights, MI 48312.

8. Upon information and belief, Defendant Mike Kinaia is an individual who is located at 2500 Westmont Circle, Sterling Heights, MI 48310.

9. Upon information and belief, Defendant Abrahim Al-Aboody is an individual who is located at 6267 Millett Road, Sterling Heights, MI 48312.

10. Upon information and belief, Defendant Haider Awad Almashadi is an individual located at 5270 Mead Street, Dearborn, MI 48126.

11. Personal jurisdiction over Defendant ZigZag LLC d/b/a Shores Distributor is appropriate because it is registered and located within this State. Upon information and belief, personal jurisdiction over Defendants Abrahim Al-Aboody, and Haider Awad Almashadi is appropriate because they reside and are located within this State. Personal jurisdiction over all Defendants is appropriate because the Defendants have engaged in substantial and systematic commercial activities with individuals and entities located in this State, have offered and/or sold goods and services within this State in the ordinary course of trade, and otherwise have constitutionally sufficient contacts with this State so as to make personal jurisdiction proper in this Court. Moreover, as described further below, Defendants intentionally

4

infringed on intellectual property rights that they knew were owned by Breeze Smoke.

12.     The Court has subject matter jurisdiction over this civil action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338 in that this case arises under the Lanham Act (15 U.S.C. § 1051, et seq.), as well as 28 U.S.C. § 1367, and pursuant to the statutes and common law of the State of Michigan.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) as Defendants reside in this District. Venue is further proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Breeze Smoke's claims occurred in this District as Breeze Smoke and its intellectual property are located in this District and Breeze Smoke offers its BREEZE-branded goods and services in this District.  Defendants expressly aimed their infringing activities at this District, where Breeze Smoke is located and where Defendants knew harm was likely to be suffered.

## BACKGROUND

### *Breeze Smoke's BREEZE Marks*

14.     Breeze Smoke is one of the most successful vape companies in history and its line of "BREEZE" products are among the most popular and top-selling vapes in the United States.

15.     Breeze Smoke manufactures and sells a variety of vaping products,

including disposable electronic vaping devices, under the mark "BREEZE" and marks that feature "BREEZE" as the dominant and distinctive element.

16.    For years, Breeze Smoke has continuously used its BREEZE and BREEZE-formative marks in connection with electronic cigarettes, including disposable vaping products and related products, in Michigan and throughout the United States.

17.    By itself and through its predecessors in interest, Breeze Smoke has offered and sold certain vaping products in connection with its BREEZE and BREEZE-formative marks since at least as early as April 2014.

18.    Examples showing Breeze Smoke's use of its BREEZE and BREEZE-formative marks are shown below:


















19.     In addition to its widespread and continuous use of the BREEZE and BREEZE-formative marks, Breeze Smoke owns several United States Trademark Registrations for its BREEZE and BREEZE-formative marks, with priority dating back until 2014, as set forth on the following chart:

8

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1. | BREEZE | 7,561,752 | Filed: November 2, 2020<br><br>Registered: November 12, 2024<br><br>First Use Date: at least as early as April 2014 | Class 34: Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; oral vaporizers for smokers; none of the foregoing containing or being for use with cannabis. |
| 2. | BREEZE PLUS | 6,770,534 | Filed: October 10, 2020<br><br>Registered: June 28, 2022<br><br>First Use Date: at least as early as March 1, 2020 | Class 34: Disposable Electronic Cigarettes |
| 3. | BREEZE | 6,296,005 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25: Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |

9

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 4. | BR⩾ZE | 6,296,004 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25: Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |
| 5. | BREEZE SMOKE | 6,976,563 | Filed: June 20, 2020<br><br>Registered: February 14, 2023<br><br>First Use Date: at least as early as March 1, 2020 | Class 34: Disposable Electronic Cigarettes |
| 6. | BREEZE PRO | 6,992,438 | Filed: March 2, 2021<br><br>Registered: February 28, 2023<br><br>First Use Date: at least as early as August 18, 2021 | Class 34: Disposable Electronic Cigarettes |
| 7. | BREEZE ODOR | 7,552,704 | Filed: | Class 4: Candles |

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | September 3, 2021<br><br>Registered: October 29, 2024<br><br>First Use Date: at least as early as March 20, 2024 | |
| 8. | **BREEZE** PRO | 7,671,271 | Filed: May 2, 2024<br><br>Registered: Jan. 28, 2025<br><br>First Use Date: at least as early as Aug. 18, 2021 | Class 34: Disposable electronic cigarettes |
| 9. | BREEZE SMOKE | 7,883,138 | Filed: Nov. 30, 2022<br><br>Registered: Aug. 5, 2025<br><br>First Use Date: at least as early as Dec. 1, 2023 | Class 34: Pre-rolled hemp cones and hemp wraps for smoking, all of the foregoing containing CBD derived from natural, organic hemp with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis. |
| 10. | BREEZE | 8,060,913 | Filed: Oct. 15, 2020 | Class 34: Ashtrays for smokers; |

| Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|
| | | Registered: Dec. 9, 2025<br><br>First Use Date: at least as early as April 14, 2025 | Lighters for smokers; Tobacco grinders |

20. Copies of the foregoing United States Trademark Registrations and accompanying Trademark Status & Document Retrieval ("TSDR") records reflecting their current status are attached hereto as Exhibit 5 and incorporated herein by reference.

21. Breeze Smoke also owns numerous pending United States Trademark Applications for its BREEZE and BREEZE-formative marks, as set forth on the below chart:

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1. | BREEZE PRIME | 97/839,842 | Filed: March 15, 2023 | Class 34: Disposable Electronic Cigarettes |
| 2. | BREEZE | 90/292,552 | Filed: November 2, 2020 | Class 14: Ornamental lapel pins<br><br>Class 16: Decals; Posters; Stickers; Plastic food storage bags for household use |

12

|  | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
|  |  |  |  | Class 18: Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags<br><br>Class 21: Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric<br><br>Class 34: Cigarette rolling papers; Smokers' rolling trays |
| 3. | BREEZE | 90/292,573 | Filed: November 2, 2020 | Class 7: Vacuum packaging machines<br><br>Class 30: Candy; Candy bars<br><br>Class 32: Bottled water |
| 4. | BR≋ZE | 90/292,568 | Filed: November 2, 2020 | Class 7: Vacuum packaging machines<br><br>Class 30: Candy; Candy bars<br><br>Class 32: Bottled water |
| 5. | BREEZE LIFE | 97/926,736 | Filed: May 9, 2023 | Class 34: Battery performance monitors sold as a component of |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | electronic disposable cigarettes |
| 6. | **BREEZE** —SMOKE— | 97/900,128 | Filed: April 21, 2023 | Class 34: Disposable electronic cigarettes |
| 7. | BREEZE ELITE | 98/146,073 | Filed: August 23, 2023 | Class 34: Electronic disposable cigarettes |
| 8. | BREEZE | 98/965,583 | Filed: January 15, 2025 | Class 34: Tobacco pouches |
| 9. | BREEZE SMOKE | 98/965,603 | Filed: January 15, 2025 | Class 34: Tobacco pouches |
| 10. | BREEZE | 99/017,564 | Filed: January 24, 2025 | Class 34: Oral nicotine pouches as a substitute for chewing tobacco; oral nicotine pouches for use as a tobacco substitute, not for medical purposes |
| 11. | BREEZE SMOKE | 99/017,569 | Filed: January 24, 2025 | Class 34: Oral nicotine pouches as a substitute for chewing tobacco; oral nicotine pouches for use as a tobacco substitute, not for medical purposes |
| 12. | BREEZE STRATUS | 99/095,377 | Filed: March 20, 2025 | Class 34: Disposable electronic cigarettes |
| 13. | BREEZE ENERGY | 99/067,457 | Filed: March 4, 2025 | Class 5: Caffeine preparations for stimulative use, namely, tobacco-free caffeine pouches<br><br>Class 32: Energy drinks |

14

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | Class 34: Tobacco substitutes not for medical purposes, namely, oral nicotine pouches also containing caffeine pouches |
| 14. | BREEZE MEGA | 99/095,386 | Filed: March 20, 2025 | Class 34: Disposable electronic cigarettes |

22. Copies of the foregoing applications, along with printouts of the accompanying TSDR records reflecting their status, are attached hereto as Exhibit 6 and incorporated herein by reference.

23. Breeze Smoke also owns Michigan State Trademark Registrations 802,511,431 and 802,511,553 for the mark BREEZE. The Michigan BREEZE registrations were registered on August 13, 2020 and assert use in commerce since at least as early as February 4, 2020.

24. Breeze Smoke also owns Florida State Trademark Registrations T21000000916 and T21000000917 for BREEZE LABS. The Florida BREEZE LABS registrations assert use in commerce since at least as early as December 31, 2014.

25. Collectively, Breeze Smoke's foregoing BREEZE and BREEZE-formative registrations and applications and its longstanding common law rights in the BREEZE and BREEZE-formative marks shall be referred to herein as the

"BREEZE Marks."

26. Collectively, the products and services in connection with which Breeze Smoke uses its BREEZE Marks, including the goods and services identified in the foregoing applications and registrations shall be referred to herein as the "BREEZE Goods and Services."

27. The BREEZE Goods and Services sold in connection with the BREEZE Marks are promoted, offered and sold through online retail platforms as well as at a substantial number of brick-and-mortar locations throughout Michigan and the United States.

28. Breeze Smoke has spent significant time, effort, and resources establishing its BREEZE Marks in the minds of its customers and the public via advertisements and promotions—including through online advertising and promotion—as representative of Breeze Smoke's BREEZE Goods and Services, including but not limited to, its high-quality tobacco-related and vaping products.

29. Breeze Smoke has generated substantial revenue through its offer and sale of the BREEZE Goods and Services.

30. As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion of its BREEZE Marks, the BREEZE Marks enjoy widespread recognition and an excellent reputation and are recognized by the public as emanating exclusively from Breeze Smoke and representative of Breeze Smoke's

high quality BREEZE Goods and Services.   The BREEZE Marks represent substantial and valuable goodwill to Breeze Smoke's business and are intangible assets of substantial commercial value to Breeze Smoke.

### *Breeze Smoke's Enforcement of its Intellectual Property Rights*

31.   Given the commercial success associated with the BREEZE Goods and Services, Breeze Smoke and its BREEZE brand have achieved a high level of popularity and recognition within the vaping community and the general public.

32.   Unfortunately, due to Breeze Smoke's success, infringers often seek to confuse consumers into believing their products have some affiliation with Breeze Smoke, when they do not, and to unfairly capitalize upon the enormous goodwill associated with the BREEZE Marks.

33.   Breeze Smoke has previously—and successfully—enforced its BREEZE Marks many times, including in the following federal actions:

   a.   *Breeze Smoke LLC v. Jarjess, et al.*, Case No. 2:20-cv-13413-AJT-EAS (E.D. Mich.) (Breeze Smoke successfully obtained permanent injunctive relief against defendants).

   b.   *Breeze Smoke LLC v. Yatin Enterprises Inc.*, No. 1:22-CV-1182, 2023 WL 3070893, at *13 (W.D. Mich. Aug. 4, 2023) (granting Plaintiff's motion for a preliminary injunction enjoining sales of BREEZY BAR vapes).

17

c. *Select Distributors, LLC et al., v. Breeze Smoke LLC, et al.*, Case No. 5:20-cv-12944-JEL-EAS (E.D. Mich.) (Breeze Smoke successfully obtained permanent injunctive relief against defendant).

d. *Breeze Smoke LLC v. World Wholesale Inc. et al.*, Case No. 2:23-cv-13266-JJCG-DRG (E.D. Mich.) (Breeze Smoke successfully obtained preliminary injunctive relief against defendants).

e. *Breeze Smoke LLC v. Speed Wholesale, Inc., et. al,* Case No. 2:25-cv-10184, D.I. 32 (E.D. Mich. Aug. 8, 2025) (ordering permanent injunctive relief).

f. *Breeze Smoke LLC v. New Wave Enterprise LLC*, Case No. 1:24-cv-012467 (E.D. Mich.) (Breeze Smoke successfully obtained preliminary injunctive relief and was granted summary judgment on its trademark infringement claims against defendant).

### Breeze Smoke's Previous Enforcement Against the Infringing BREEZY BAR Products

34. In late October 2022, Breeze Smoke became aware that the Infringing BREEZY BAR Products were being marketed, promoted, advertised, and offered for sale by certain retailers and distributors, namely: Yatin Enterprises Inc., Mini Market, LLC, Drake Party Store, LLC, Pennfield Party Store, Midtown Smoke Shop, Inc., SG, LLC, Wild Monkey Smoke Shop, Price Point Distributors Inc. and Suleiman Capital, Inc. (collectively referred to as "Previous Defendants").

18

35.    An example showing the Infringing Products that the Previous Defendants offered and sold in approximately October 2022 appears below (*see Breeze Smoke LLC v. Yatin Enterprises, Inc.,* Case No. 1:22-cv-01182-HYJ-SJB, ECF No. 1, ¶ 30):



36.    Breeze Smoke brought suit against the Previous Defendants in the Western District of Michigan. *See Breeze Smoke LLC v. Yatin Enterprises, Inc., et al.,* Case No. 1:22-cv-01182-HYJ-SJB to stop this clear infringement of its valuable BREEZE Marks.[1]

37.    In that prior case, Breeze Smoke sought and obtained a Preliminary Injunction from the Court (Exhibit 3) which enjoined the Previous Defendants from

---

[1] Breeze Smoke initially filed this case in the Eastern District of Michigan but it was transferred to the Western District of Michigan.

"directly or indirectly using the name or mark "BREEZY," or any other name or mark including or incorporating that term, in connection with the marketing or sale of tobacco or vaping products, or any other related products or services."

38.     The Previous Defendants eventually agreed to a Stipulated Permanent Injunction which the Court entered and which prohibits the Previous Defendants from, among other things, offering and selling the Infringing Products. See Exhibit 4.

39.     That Permanent Injunction remains valid and in full force and effect and applies to both the Previous Defendants and all those in concert with them.

### *Breeze Smoke's Discovery of the Sale of the Infringing Products Nearly Three Years After the Injunction*

40.     Just days ago—nearly three years after the Court in the *Yatin* case entered the Permanent Injunction—Breeze Smoke became aware that the Infringing BREEZY BAR products were suddenly back on the market.

41.     As shown below, the products that recently appeared back on the market appear to be the very same infringing BREEZY BAR products that were at issue and enjoined in the *Yatin* lawsuit:

| Previous BREEZY BAR Products | New Infringing Products |
|---|---|
|  | |

42.     Through its prompt investigation, Breeze was able to identify Defendants as at least some of the actors currently engaged in the sale and distribution of these unlawful products.

43.     On May 27, 2026, Breeze Smoke sent a cease and desist letter to Defendants, placing Defendants on express written notice of Plaintiff's rights in the Breeze Marks, provided notice of the permanent injunction enjoining all sales of the "Breezy Bar" product, and demanded that Defendant immediately cease all sales and distribution of the "Breezy Bar" product. See Exhibit 1.

44.     Having heard nothing from Defendants in response to its letter, Breeze Smoke sent an investigator to Defendants' retail location on June 1, 2026 to attempt to purchase the Infringing Products, and the investigator successfully purchased samples of such products. Thus, Defendants have continued to sell the Infringing Products even after receiving notice of the infringement from Breeze Smoke. See

Exhibit 2.

45. Defendants are directly competing with Breeze Smoke in that they are marketing, promoting, advertising, offering, distributing and selling virtually identical or closely similar disposable vaping products to the same customers or the same or similar classes of customers as Breeze Smoke under a mark, BREEZY, that another federal court in Michigan has already found is virtually identical to the BREEZE Marks.

46. Breeze Smoke has not licensed or otherwise authorized any of the Defendants to use its highly valuable and well-established BREEZE Marks in any manner whatsoever.

47. Defendants' continued infringement, even following express written notice of their infringement and of the Stipulated Permanent Injunction issued in the previous litigation concerning the Infringing Products, constitutes willful and deliberate infringement of Breeze Smoke's BREEZE Marks. Defendants' willfulness can only be to suggest a false affiliation between Breeze Smoke and its goods and services on the one hand and Defendants and their goods and services on the other, or to deliberately mislead and confuse customers about the source of the parties' respective goods.

48. Through their unauthorized and infringing uses of the BREEZE Marks, Defendants are deliberately and improperly capitalizing upon the goodwill that

Breeze Smoke has built up in its BREEZE Marks.

49.     Defendants' unauthorized, unlawful, and intentional use of the BREEZE Marks has caused, and will continue to cause, a likelihood of confusion among consumers and potential consumers as to the source or origin of the Infringing Products and the sponsorship or endorsement of those goods and services by Breeze Smoke.

50.     As a direct and proximate result of Defendants' unauthorized conduct, Breeze Smoke has been and will continue to be damaged by likely and actual confusion among consumers and potential consumers as to Breeze Smoke's association or connection with, or endorsement or authorization of, Defendants and/or the Infringing Products, at least in part in ways that cannot be adequately measured or fully remedied by monetary damages.

51.     As a result of Defendants' intentional misappropriation of the BREEZE Marks for use in connection with the Infringing Products, Defendants have caused, and will continue to cause, irreparable injury to Breeze Smoke and have substantially damaged the value of Breeze Smoke's BREEZE Marks.

52.     Defendants have unjustly enriched themselves at Breeze Smoke's expense by displaying, marketing, advertising, promoting, distributing, offering to sell, and selling the Infringing Products.  Among the benefits that Defendants have gained from their unlawful and willful conduct are increased revenues from the sale

of the "Breezy Bar" products.

53.   To date, Defendants have not ceased selling or offering to sell the Infringing Products and continue to still offer and sell the Infringing Products.

54.   With every day that passes, Defendants' sale of the "Breezy Bar" products compounds the irreparable harm to Breeze Smoke.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**OF A REGISTERED MARK**
**(15 U.S.C. § 1114)**

55.   Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

56.   Breeze Smoke owns valid and enforceable rights in the BREEZE Marks in connection with the goods and services it offers and sells in connection therewith by virtue of its extensive use, promotion, and advertisement of the marks, and has possessed such rights at all times material hereto.

57.   Breeze Smoke owns rights in its BREEZE Marks, including several valid registrations for its BREEZE Marks.  Specifically, Breeze Smoke owns federally registered trademark numbers 6,296,004; 6,296,005; 7,561,752; and 8,060,913 for the mark BREEZE, 6,770,534 for the mark BREEZE PLUS, 6,976,563 and 7,883,138 for the mark BREEZE SMOKE, 6,992,438 and 7,671,271 for the mark BREEZE PRO, and 7,552,704 for the mark BREEZE ODOR.

58.   The foregoing registrations are *prima facie* evidence of the validity of

the BREEZE Marks and of Breeze Smoke's ownership of the BREEZE Marks.

59. Breeze Smoke's use of its BREEZE Marks in connection with tobacco-related and other vaping products predates any use by Defendants.

60. Defendants knowingly and intentionally market, promote, advertise, distribute, offer to sell, and sell the Infringing Products.

61. Defendants are selling and offering to sell the Infringing Products with full knowledge that consumers are likely to confuse them with the BREEZE Goods and Services.

62. Defendants have been informed and are fully aware of Breeze Smoke's extensive prior use of the BREEZE Marks.

63. Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the BREEZE Marks.

64. Defendants' marketing, promotion, advertising, offering for sale, and selling of Infringing Products are likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand and the BREEZE Goods and Services on the other, and is likely to cause such people to believe in error that Defendants' goods and services have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Defendants are in some way affiliated with Breeze Smoke.

25

65.   Such confusion, deception or mistake has already occurred, and is likely to continue to occur, as a direct result of Defendants' displaying, advertising, promoting, offering of sale and selling of the Infringing Products.

66.   Defendants' actions constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

67.   Though Defendants had prior knowledge of Breeze Smoke and its BREEZE Marks and the BREEZE Goods and Services, and received notice from Breeze Smoke that they were infringing Breeze Smoke's BREEZE Marks and that there is a permanent injunction in place prohibiting the sale of the Infringing Products, they infringed and continue to intentionally infringe the BREEZE Marks.

68.   Defendants' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

69.   Defendants' conduct has occurred in interstate commerce and substantially impacts interstate commerce.

70.   As a direct and proximate result of Defendants' conduct, Breeze Smoke has suffered damage to the valuable BREEZE Marks, as well as harm to its valuable goodwill and reputation.

71.   Defendants' conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

72.   An award of money damages alone cannot fully compensate Breeze

26

Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

## COUNT II
## FEDERAL UNFAIR COMPETITION
## AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

73.     Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

74.     Breeze Smoke owns valid and enforceable rights in the BREEZE Marks in connection with the goods and services it offers and sells and has possessed such rights at all times material hereto.

75.     Breeze Smoke's use of the BREEZE Marks in connection with tobacco-related and other vaping products predates any use by Defendants.

76.     Defendants have knowingly and intentionally used and continue to use in commerce the BREEZE Marks in connection with the vaping and tobacco-related goods by advertising, promoting, distributing, and selling the Infringing Products.

77.     Defendants knowingly and intentionally sell the Infringing Products with full knowledge of Breeze Smoke's extensive prior use of the BREEZE Marks.

78.     Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the BREEZE Marks.

79.     Defendants' marketing, promotion, advertising, distribution, offering for sale, and selling of the Infringing Products are likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin,

27

source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand and the BREEZE Goods and Services on the other, and is likely to cause such people to believe in error that Defendants' goods have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Defendants are in some way affiliated with Breeze Smoke.

80.     Such confusion, deception, or mistake has already occurred, and is likely to continue to occur, as a direct result of Defendants' use of the BREEZE Marks in connection with the display, advertising, promotion, offer of sale, and sale of the Infringing Products.

81.     Defendants' actions constitute unfair competition, false designation of origin, false or misleading description of fact, and false or misleading representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

82.     Though Defendants had prior knowledge of Breeze Smoke and its BREEZE Marks and the BREEZE Goods and Services, and received notice from Breeze Smoke that they were infringing Breeze Smoke's BREEZE Marks and that there is a permanent injunction in place prohibiting the sale of the Infringing Products, they continue to intentionally infringe the BREEZE Marks.

83.     Defendants' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

28

84.    As a direct and proximate result of Defendants' conduct, Breeze Smoke has suffered damage to the valuable BREEZE Marks, as well as harm to its valuable goodwill and reputation.

85.    Defendants' conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

86.    An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

## COUNT III
## COMMON LAW UNFAIR COMPETITION

87.    Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

88.    Defendants were aware of Breeze Smoke's prior use of the BREEZE Marks and used the BREEZE Marks in disregard of Breeze Smoke's rights.

89.    Defendants' actions have resulted in the misappropriation of, and trading upon, Breeze Smoke's valuable goodwill and business reputation at Breeze Smoke's expense and at no expense to Defendants.  The effect of Defendants' misappropriation of the goodwill symbolized by the BREEZE Marks is likely to unjustly enrich Defendants, damage Breeze Smoke, and confuse and/or deceive the public.

90.    Defendants' actions constitute unfair competition with Breeze Smoke, which has caused and will continue to cause irreparable injury to Breeze Smoke's

goodwill and reputation unless enjoined.

91.    An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

## COUNT IV
## UNJUST ENRICHMENT

92.    Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

93.    By misappropriating Breeze Smoke's valuable goodwill and reputation through the improper use of the BREEZE Marks, Defendants have been unjustly enriched to the material detriment of Breeze Smoke.

94.    Defendants are realizing profit and will continue to realize a profit from their improper use of the BREEZE Marks.

95.    Defendants' actions have directly and proximately caused irreparable harm to Breeze Smoke and its valuable goodwill and reputation, and will continue to harm Breeze Smoke unless enjoined.

96.    An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

97.    Breeze Smoke is entitled to compensatory damages in the form of restitution and such other and further relief as the Court deems equitable and just.

## PRAYER FOR RELIEF

WHEREFORE, Breeze Smoke respectfully requests and prays that the Court:

A.      Enter judgment in Breeze Smoke's favor and against Defendants on all counts of the Complaint;

B.      Determine that Defendants willfully violated the Lanham Act, that Breeze Smoke has been damaged by such violations, and that Defendants are liable to Breeze Smoke for such violations;

C.      Determine that Defendants have committed common law trademark infringement, that Breeze Smoke has been damaged by such infringement, and that Defendants are liable to Breeze Smoke for common law trademark infringement;

D.      Determine that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

E.      Under all claims for relief, issue a temporary restraining order and a preliminary and permanent injunction enjoining Defendants and any of their officers, employees, agents, successors and assigns, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunctions:

1.      from using in any manner the BREEZE Marks and any variations thereof, or any other name, term, phrase, mark, design, device or symbol which so resembles or is similar to the BREEZE Marks so as to be likely to

31

cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like;

2.      from further unlawfully trading upon and misappropriating the goodwill and reputation of Breeze Smoke and competing unfairly with Breeze Smoke;

3.      from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts; and

4.      from making any false or misleading descriptions of fact or false or misleading representations of fact in their commercial advertising or promotion about the nature, characteristics, or qualities of their products or related commercial activities.

F.      Order Defendants to file with the Court and serve on Breeze Smoke, within thirty (30) days after service on any of them of such injunction (or such extended period as the Court may direct), a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

G.      In accordance with 15 U.S.C. § 1118, order Defendants to deliver to Breeze Smoke, at Defendants' expense, for destruction or other disposition, all products, including, without limitation, all labels, packaging, signs, prints, advertisements, promotional, and other materials, incorporating, bearing, or

32

displaying a trademark confusingly similar to the aforementioned trademarks of Breeze Smoke or which otherwise violate 15 U.S.C. §§ 1114 and 1125(a), in the possession, custody, or control of Defendants, as well as any reproduction, counterfeit, copy, or colorable imitation thereof, and all other materials or means of making the same;

H.      Order that Defendants account for and pay over to Breeze Smoke all gains, profits, and advantages derived from their violation of 15 U.S.C. §§ 1114 and 1125(a) and the common law, and also pay to Breeze Smoke the damages which Breeze Smoke has sustained by reason of such violations, together with legal interest from the date of accrual thereof;

I.      Because of the willful nature of said violations and pursuant to 15 U.S.C. § 1117(a), order that Defendants be required to pay over to Breeze Smoke enhanced damages;

J.      Order that Defendants be required to pay Breeze Smoke's reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a);

K.      Award interest, including pre-judgment interest on the foregoing sums;

L.      Award Breeze Smoke an amount of money to undertake corrective advertising;

M.      Award Breeze Smoke enhanced damages based on Defendants' willful and intentional conduct; and

33

N.      Grant Breeze Smoke any other relief as the Court deems necessary and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Breeze Smoke demands a trial by jury on all issues present in this civil action.

Dated:  June 8, 2026                              Respectfully submitted,

By:  *Jeffrey K. Lamb*
Jeffrey K. Lamb (P76738)
HONIGMAN LLP
660 Woodward Ave., Suite 2290
Detroit, MI 48226-3506
Telephone: (313) 465-7404
jlamb@honigman.com

Mary A. Hyde (P83066)
HONIGMAN LLP
321 N. Clark St., Suite 500
Chicago, IL 60654-4769
Telephone: (312) 701-9360
mhyde@honigman.com

Yafeez S. Fatabhoy (P83064)
HONIGMAN LLP
101 N. Main Street, Suite 850
Ann Arbor, MI 48104-1491
Telephone: (734) 418-4217
yfatabhoy@honigman.com

*Attorneys for the Plaintiff Breeze Smoke LLC*